## Case No. 2,030.

### BROWN v. SELBY.

[2 Biss. 457;[1] 4 Fish. Pat. Cas. 363.]

Circuit Court, N. D. Illinois. Feb., 1871.[2]

PATENTS—RE-ISSUES—ONLY FOR ORIGINAL INVENTION—EACH PART SHOULD STAND SEPARATELY—IMPROVEMENTS—SEAT UPON PLANTER.

1. A re-issue can only be for the invention originally made, and intended to be described or claimed, and included in the original patent.

2. It would seem to be a sound principle, when, on a re-issue at the desire of the patentee, several patents are issued, under section 5 of the act of 1837 [5 Stat. 192], for distinct and separate parts of the thing patented, that each part covered by each patent should stand by itself as an invention.

3. Where the patentee is not the inventor of the original machine, but is a mere improver, his claims must be construed under the guidance of that leading fact.

4. It is a fundamental rule that if a man merely improves a machine, he should clearly disclose to the public in his specifications what is new in his invention.

5. Vague and sweeping claims of entire machines, where a patentee has only improved a part, ought not to be encouraged.

6. A claim for the form and location of a seat upon a machine might stand if there was any change or modification of the parts by which a seat was obtained, but only under special circumstances. If the claim be only for mounting the attendant in such a position that he may overlook the work, it cannot stand, unless the mode and manner of the position be pointed out, and is the subject of invention.

7. The claims of the ten re-issues of the patents issued to George W. Brown for "improvements in seed planters" in 1853 and 1855, examined, construed and limited.

[1] [Reported by Josiah H. Bissell, Esq., and here reprinted by permission.]
[2] [Reversed in The Corn-Planter Patent, 23 Wall. (90 U. S.) 181.]

8. Brown was not the inventor of the runner for seed or corn planters, nor the first to mount the attendant upon the machine.
[See note at end of case.]

[9. Cited in National Harrow Co. v. Hanby, 54 Fed. 493, to the point that the fact that an alleged infringing machine is patented is prima facie proof that it does not infringe.]

In equity. This was a bill [by George W. Brown against James Selby and others] to restrain the defendants from infringing letters patent [No. 9,893] for "an improvement in seed planters," granted to complainant August 2, 1853, antedated February 2, 1853, re-issued February 16, 1858, and again re-issued September 11, 1860, in five divisions, numbered 1,036, 1,037, 1,038, 1,039, 1,040; and also letters patent [No. 12,811] for "an improvement in seed planters," granted to complainant May 8, 1855, re-issued November 10, 1857, and again re-issued December 11, 1860, in five divisions, 1,091, 1,092, 1,093, 1,094, 1,095. [Bill dismissed.]

The inventions set forth in these various patents related to machines known as "corn planters," and are sufficiently indicated by the claims. The claims of these several patents were as follows: Original patent of 1853: "The oscillating horizontal wheels or distributors, in the bottom of the hoppers, having slots and holes of various sizes in combination with stationary cups and pin, for the discharge of different kinds and quantities of seeds; also the arrangement of the covering rollers, mounted as described, and performing the purpose of covering the seed, elevating the cutters in turning around, and in adjusting them to different depths." Re-issue of 1858: "I claim a shoe for opening a furrow, which has a convex edge in front and a seed tube in the rear end, so that it may cut through any grass, open a furrow and hold it open until the seeds are deposited in it, substantially as herein set forth." Re-issue No. 1,036: "I claim a seed planting machine, constructed principally of frame-work, the front part of which is supported on not less than two runners or shoes with upward inclining edges, and the rear part supported on not less than two wheels, the latter being arranged so as to follow the former, substantially as and for the purpose set forth." Re-issue No. 1,037: "I claim the construction of a shoe or runner for seed planting machines, with an upward inclining edge, and its point sufficiently high or raised so that it will climb up and over, or cut or break through, intervening obstacles without materially forcing the earth laterally at its front part, and widening toward the rear end, so as to open out a gash or furrow, in which the seed to be planted may be deposited, and long enough to furnish a support to the frame-work, substantially as described." Re-issue No. 1,038: "I claim, in combination with a seed planting machine, constructed principally of frame-work, with not less than two runners, and no less than two wheels, a

hinged joint between the point of the tongue and with the rear part of the machine, so that one part of the frame-work may be raised, lowered, adjusted or supported on the other part, substantially as described." Re-issue No. 1,039: "I claim a seed planting machine, wherein the seed dropping mechanism is operated by hand or by an attendant, in contradistinction from 'mechanical dropping,' the mounting of such attendant in such position that he may readily see the previously made marks upon the ground, and operating the dropping mechanism to conform thereto, substantially as set forth. I also claim, in combination with a seed planting machine, composed substantially of frame work, and upon which the person who works the seed slides or valves sits or stands, a lever or its equivalent, by which a driver or second attendant may raise or lower that part of the frame-work which carries the attendant and the seeding devices, and thus ease the machine in passing over intervening obstacles or in turning around, substantially as described." Re-issue No. 1,040: "I claim, in combination with a seed planting machine, carried mainly by, or supported mainly upon, not less than two runners and two covering wheels, a pair of auxiliary wheels and an axle, for the double purpose of taking a portion of the weight off from said runners and covering wheels, and for affording the means of readily converting the machine from a hand planter to an automatic seed sower, substantially as described. I also claim having the axle of the auxiliary wheels in hinged or adjustable arms or levers, so that more or less of the weight of the machine may be placed upon said auxiliary wheels, substantially as described." Original patent of 1855: "In combination with the hoppers and their semi-rotating plates, D, the runners, A, with their valves, F, and their adjustment by means of the levers and cams, and the driver's weight, for the purpose of carrying and dropping seeds by each vibration of the lever, D, and to regulate the depth of the planting, as described." Re-issue of 1857: "What I claim is in combination with the hinged frames or hinge joint, the locating of the conductor's or driver's seat in rear of the supporting axle, so that as he moves forward or back in his seat, the rear frame may act as a lever for lowering or raising the seeding part of the machine, and thus throw it into or out of the ground, as circumstances may require, in turning around or for passing over any obstruction, substantially as set forth." Re-issue No. 1,091: "I claim, in combination with a seed planting machine that is operated by hand, the placing of both the driver and the person who operates the seed slides or valves, upon the machine in such position as that each may attend to his particular duty without interfering with that of the other, substantially as described. I also claim, in combination with a seed planting machine that is operated by hand, and upon which the driver and the person who works the seed slides or valves sit or stand, the so locating of said seats or stands as that the weight of one of the persons may be used to counterbalance or overbalance the weight of the other for the purpose of more readily raising or lowering the seeding apparatus, substantially as and for the purpose described." Re-issue No. 1,092: "I claim, in combination with a seed planting machine operated by hand, and having its seed device forward of the center of the wheels and forward of the driver's seat and a hinged connection, the locating the seat in such relation to a line drawn through the center of the wheels or ground supports as that the occupant of such seat may, by moving himself or throwing his weight backward or forward on his seat, without the necessity of rising, walking or standing, over or near the seeding devices, force the seeding apparatus into or raise it from the ground, substantially as described." Re-issue No. 1,093: "I claim, in combination with a seed planting machine that has a hinged or yielding point between its fixed points of support, and with its seeding devices between said points the so connecting of the parts between said fixed points of support, as that that portion of the machine carrying the seeding devices may be raised up out of the ground by the attendant riding upon the machine, and be carried by the tongue or horses' necks and the supporting wheel, substantially as and for the purposes described." Re-issue No. 1,094: "I claim, in combination with a seed planting machine, so as the forward part can be raised up on the supporting wheels and there carried, a lock, block or stop, B, which prevents the rear part of the frame from descending so low as to strike the ground or inconvenience the occupant of the seat upon said rear portion of the frame, substantially as and for the purpose described." Re-issue No. 1,095: "I claim so combining with a lever, by which both may be operated, a valve or slide in the seed hopper and a valve in the seed tube, as that a half motion of the lever by the operator riding on the machine, by which they are operated, shall both open and close the seed passages at regular periods, and pass measured quantities only, substantially as described."

S. A. Goodwin and George Harding, for complainant.

J. H. Roberts, H. F. Waite, and S. S. Fisher, for defendants.

DRUMMOND, Circuit Judge. This and three other cases were argued together, and as one of the cases was pending in the southern district the argument was heard by Judge Treat and myself. They have been argued with great ability, and every consideration urged which could influence the judg-

ment of the court. They involve substantially the same questions and will be decided together. They relate to various patents for a corn planting machine issued to the plaintiff and to the defendants (for all claim to be manufacturing machines under the protection of patents), but the controversy turns mainly upon the validity and effect of several patents issued to the plaintiff George W. Brown. In order properly to appreciate the position of the plaintiff, as well as to give a sound construction to his numerous patents, it is necessary to state briefly what was done by him, and the action of the patent office on his applications. The ten patents of the plaintiff consist of two series—the offshoots of only two patents, one issued in 1853, the other in 1855. In his first specification he declared his invention to be a new and useful improvement in seed-planters, and he made two claims only. The first was for an apparatus in the hoppers for the purpose of discharging seeds. The second was for a special arrangement of the rollers, for the purpose of covering the seed, elevating the cutters in turning around, and adjusting the same. This patent was surrendered and re-issued in 1858, on the ground that there was an error or defect in the specifications or claims. The re-issued patent also contained two claims. The first was for a shoe or runner, of particular construction, and performing special functions. The second was a joint, or hinge, in combination with the shoe, so that the latter might be raised or lowered. The apparatus in the hoppers and the covering rollers seem to have been forgotten or relinquished. In 1860, this last re-issue was again surrendered for the same reason and another re-issue taken out in five several divisions of distinct patents, for separate parts of the machine, numbered 1,036, 1,037, 1,038, 1,039 and 1,040; the invention claimed in the patent of 1853, ·having blossomed out into many additional claims, some of them, apparently, not originally thought of by the inventor. These constitute the first series of patents, and all of them, except No. 1,040, are more or less in controversy here.

The second series comes from the patent of 1855. In that the plaintiff claimed, in combination with the apparatus in the hoppers, a dropping apparatus in the runners, and the special adjustment by levers and cams, and the driver's weight, so as to drop seeds at each vibration of a lever and regulate the depth of the planting. In 1857 this was surrendered, and a re-issue obtained with the claim of locating the driver's seat in rear of the supporting axle, in combination with the hinged frames or joint, so that the movement of the driver forward or backward in his seat might cause the rear frame to act as a lever for raising or lowering the seeding part of the machine. In 1860 this last re-issued patent was surrendered, and another re-issue obtained, containing five divisions—Nos. 1,091, 1,092, 1,093, 1,094, and 1,-095; several patents for distinct and separate parts of the thing patented in 1855. All of these are in controversy here.

A re-issue can only be for the invention originally made and intended to be described or claimed, and included in the original patent. The language of section 13 of the act of 1836 (5 Stat. 122) is that the "new patent is to be issued" for the same invention, "for which the original patent was granted." The object of the law is to enable the patentee to correct errors arising from "inadvertency, accident, or mistake." It would also seem to be a sound principle that when, on a re-issue at the desire of the patentee, several patents are issued under section 5 of the act of 1837, for distinct and separate parts of the thing patented, each part covered by the patent should stand by itself as an invention.

Patent No. 1,036 of the first series is a claim for a seed planting machine constructed principally of frame-work, the front part of which is supported on not less than two runners or shoes with upward inclining edges, and the rear part supported on not less than two wheels, the latter being arranged to follow the former, substantially as and for the purpose set forth. This is a claim for the whole machine, as described. The parties do not agree as to the construction of this claim. The counsel for the plaintiff contend that it consists of a combination of two frames, connected by a jointed hinge, runners· and rollers; although, as I understand them, they insist that the peculiar form and construction of one of the parts—e. g. the runners—are not a necessary part of the combination. The counsel for the defense contend that the claim consists of a combination of frame-work, runners and rollers. If, as the counsel for the plaintiff contend, this claim consists of the hinge joint, the runners, the rollers, and of two frames, and notwithstanding an essential change in one of the parts, there may still be an infringement, then it would seem to follow, if this claim is valid, that it in substance embraces in itself all the material parts of the corn planting machine. The evidence shows that rollers, runners and frames, and some mode of flexure, are all indispensable elements in every successful corn planting machine. Many of these were devised and in operation before the plaintiff had modeled and made a successful machine, in 1851 or 1852, and, if all these parts are to be included in this claim, then it is clear there cannot be the qualification named, but there must be, on the contrary, a somewhat rigid limitation to the form and manner of the combination, otherwise all improvements in that direction would be suspended. A necessary conclusion from this would be that it must appear that defendants have used machines combining the parts of the plaintiff's machine, with their peculiar construction and mode of operation.

But it seems to me, in view of the history

of the art, and of the facts as shown here, a claim put in such general terms as this, ought not to be permitted to stand. The plaintiff here substantially lays his hand on the corn planting machine entire. Has he any right to do this? I think not. The weight of the evidence is that he did not make an operating machine before the summer or fall of 1851. Prior to this, corn planting machines were used, with more or less success, containing runners, frames and rollers, similar to those the plaintiff afterwards put in his machine. Then consider the account which the plaintiff himself gave of his invention up to 1860. He stated clearly what parts of the machine he claimed. True, he is not bound by his claim if there was an error, but the error is not often in the omission to insist upon what the patentee has invented.

The plaintiff was not the inventor of the corn planter. He was at most but an improver of the machine, and his claims must be construed under the guidance of that leading fact. Having improved the corn planter, he should have stated in 1853 to the patent office what his improvement was. If he committed an error then, he should have corrected it in 1858, or at the latest in 1860. He had used in his machine the improvements of others. It was not fair to the public that he should use those improvements, and then say that he claimed them, as well as his own. I take it to be a fundamental rule in this class of cases, that if a man merely improves an agricultural implement, and seeks the protection of the patent law, he should clearly disclose to the public in his specifications what is new in his invention. These vague and sweeping claims of entire machines where the patentee has only improved a part, ought not to be encouraged. They lead to confusion and difficulties of various kinds. The very object of the patent law was to draw the line clear and distinct in this direction, as an act of justice both to the inventor and to the public. Whether this construction of the claim is correct or not, is not, perhaps, very material, because the separate claims remain to be considered, and I am of opinion, for reasons more fully stated hereafter, that this claim, even if it be regarded as a valid claim for the entire machine as described by the plaintiff, is not infringed by the defendants. With that construction the peculiar structure and connection of the parts of the machine made by the plaintiff should be most closely scrutinized, and to it they should be strictly confined. Only in this way could the claim be sustained.

Patent No. 1,037 is for the construction of a runner with an upward inclining edge, so as to climb over, or cut or break through, obstacles, without materially forcing the earth in front laterally, so as to open a furrow for the deposit of the seed, and to furnish a support for the frame-work. This claim is for a runner of peculiar form in a seed planting machine. The plaintiff's counsel do not themselves entirely agree as to the construction of this claim. In order to be valid under one view of the evidence, it is insisted it is one of the parts of the elements of the hinge-joint machine. If it is one of the parts of the entire machine, as stated in the first claim, then it must be substantially limited to the form described. But I do not see how this claim can be supported, under the evidence, understanding it to be for the described runner in a seed planter. I prefer putting it on its substantial identity with the runners used in corn planting machines. Kirkman, Job Brown and Abbott anticipated the plaintiff in the construction of the runners. It is impossible to distinguish them in principle from that of the plaintiff. They opened a furrow to plant the seed. They climbed over, or cut or broke through obstacles with their rising inclined edge. They supported the frame. To the eye they are essentially the same. And as the plaintiff could not include the entire planting machine, because he did not specify the parts he invented; so he cannot claim a part of that machine invented by others, merely because his was in some respects constructed differently from theirs. It may be added here that the plaintiff himself, in his evidence, says that all who use a runner similar to his infringe his claim, although there is testimony tending to show that he did not claim the runner in the patent of 1853, because others had used it before.

Patent No. 1,038 is for the hinged joint between the point of the tongue and the rear part of the machine, so that one part, by means of the joint, may be lowered, adjusted or supported on the other part. To this claim, properly construed, I see no objection. But it cannot be understood to comprehend any kind of joint to render flexible two frames. If so, it would be void, because joint hinges are old, and, indeed, would seem to be, if a mere hinge or joint, but a mechanical contrivance. The plaintiff's method of jointing the two frames is by bars, one on each side of the rollers, leading from the axle to the outside of each seed box, through which is a connecting rod. In the plaintiff's joint the horses make a point of bearing or support, and the rear frame thus becomes a lever, by which through the hinged joint the runner and seed part are raised or lowered. It is in the nature of the case, therefore, that the claim of the plaintiff should be restricted to his peculiar mode of construction, and, that being so, the only question is whether the defendants use that particular jointed hinge. If the plaintiff, when he says it is immaterial where it hinges, means that he covers any method of hinging, then, as has been stated, the claim must fall. The plaintiff cannot be permitted in this way to put a stop to every

other mode of hinging frames on a seed planter. The jointed hinge in Bergen's machine seems to be the nearest to the plaintiff's; but Bergen has two slotted joints on the sides of the frame, and a lever bar adjustable, and the horses' necks through the tongue are not a bearing point, and, in fact, Bergen has a patent for his own special hinged joint. In Haworth and Selby's machines the joint is at the forward part of the runner, and the support is in the wheels, and the peculiar structure of the joint apparatus is different. McGaffey's is jointed between the runners by collars fitting over a journal box, through which a shaft revolves automatically. The place of bearing seems to be nearly the same, but the mechanical construction is different. Limiting then the claim of the plaintiff in the manner stated, the defendants do not infringe.

Patent No. 1,039 consists of two claims, one the mounting of an attendant upon a hand-dropping seed planter, so that he may see the marks on the ground, and thus perform the check row planting; the other, a lever, by which another person may raise or lower the part of the frame-work that carries the attendant and the seeding device, and thus ease the machine in passing over obstacles, and in turning round. The literal import of the first of these claims would seem to be for an effect or result, and, as such, could not be sustained; but perhaps for a special method in which the attendant is mounted, that is, the form and location of the seat, it might stand, provided there were anything in it which was the subject of invention, as if there was any such change or modification of the parts, by which a seat was obtained. The difficulty in this case is to see clearly what particular thing is claimed. What is the peculiarity of construction or arrangement of the seat which is patented? If it be only the mounting of an attendant in such a position that he may overlook the work, then it cannot stand, unless the mode and manner of the position is pointed out specially, and it can be seen that it may be the subject for a patent. It seems to me this claim is defective in these particulars. To put an attendant upon a planting machine was not the original device of the plaintiff. It had been done before by Kirkman, Job Brown, and others. All the defendants mount the dropper upon the machine, so as to overlook the check row marks, and I see nothing in this claim, or its specifications, to prevent it. Many of the observations heretofore made apply to this claim. As to the lever, all that has ever been said of the hinged joint applies here. Construed to be the peculiar structure set forth by the plaintiff, and it is only in that way it can be sustained, the defendants do not infringe.

In discussing the patents of the second series, re-issues of the patent of 1855, much less need be said. Patents Nos. 1,091 and 1,092 are for placing the driver and planter on the machine, so that each may attend to his duty without interference with the other; the locating the seats so that the weight of one may counterbalance or overbalance the weight of the other; the location of the seat, so that the occupant, by changing his position thereon, may raise or depress the seeding apparatus. As to the first claim, the remarks made upon the first claim under patent 1,039 of the first series, are applicable. As to the second, the proof shows the plaintiff does not accomplish by his device the result he claims—overbalancing the dropper's weight by the driver's. As to the third, the long seat, the defendants do not use it, and besides, as in the last case, in practical operation it does not accomplish the result stated. Whenever the seeding apparatus is to be raised the driver always gets off, and this is true of all the machines—plaintiff's as well as defendants'. Patent No. 1,093 is for so connecting the parts between the fixed points of support that the seeding apparatus may be raised up out of the ground, and carried by the tongue or horses' necks and the supporting wheels. If it be admitted that this claim can stand, as not being a result, then it must be limited to the particular method pointed out in the specification, and it approaches very near, if it is not substantially included in, some previous claims. However all this may be, restricting it in a proper manner, the defendants do not infringe, for the reasons stated when considering the claims for the hinged joints in the former series. Patent No. 1,094 is for the lock, stop or block on the outer side of the seed hoppers, in order that the rear frame may be prevented from descending so as to strike the ground. The defendants do not use this device. Patent No. 1,095 is for the combination of a lever with the valve in the seed hopper, and a valve in the seed tube, so that a half motion of the operator shall open and close the seed passages at regular periods, and pass measured quantities of corn only. It is insisted now that the plaintiff invented this device in 1852. I think the testimony establishes that this invention was made a year or two later, and after those of Case and Finn, Finn's being in the summer or fall of 1851, and that of Case in February of 1853. In Finn's machine it required two motions of the lever to plant the hill. Case, by means of a spring or weighted lever, planted the hill by one motion. It is established that the plaintiff, when sued in this court in 1860 by Case, for an infringement of his patent, insisted, and proclaimed through the public press, that the double dropping principle was public property and had long been used. The plaintiff certainly used this device as early as 1854, and it appears in his model and specifications in 1855, but he made no claim to it; neither did he in the re-issue of 1857, but in 1860, in the sec-

ond re-issue of the second series, he puts in a claim to it. If it be conceded that, under these circumstances, he is not estopped from setting up this claim—a very serious question—then he should have clearly set out what part of the dropping apparatus he invented. It is, in fact, a duplication of the Finn device for dropping corn, two tubes, side by side, operating by a common valve. It is contended that this claim was established by the result of the trial of Case v. Brown [Case No. 2,488], in this court, which judgment was sustained by that of the supreme court; but it will be recollected that the point put to the jury in that case, and upon which they found, was whether the defendant used all the various parts of the combination of Case in the dropping apparatus: and it may well be that they believed that he did not so use, and therefore found against Case and for Brown, on that issue. It has therefore become no less the duty of the court to look into this claim of the plaintiff, in consequence of its being presented in this case, notwithstanding the determination of the case of Case v. Brown [supra]. Nothing has thus far been said of the machine of Job Moffett, which, it is claimed, was made and used about the year 1834, at and near New Richmond, Ohio. The testimony bearing on this machine is certainly very remarkable. There are twelve witnesses who, with more or less confidence, verify its existence. On the other hand, a very large number of witnesses living at the same time at and near New Richmond, negative this, and among them is Moffett himself, now a resident of Oregon. I am convinced there was a machine made by Moffett for corn planting, consisting in part of runners and rollers, and a flexible frame, but the testimony as to the peculiar structure of the different parts of the machine cannot be confidently relied upon. It was the only machine, and seems to have been abandoned. No controlling stress has, therefore, been placed upon it. As has already been stated, the defendants are all claiming under patents, many of which embrace essential parts of their machines. They are, therefore, prima facie protected in their rights. It is true, if the plaintiff is a prior inventor and patentee, their claims, so far as they trench upon his, must yield. But all of these parties claim to be improvers of the corn planter. There are numerous patents upon different parts of the machine, and it would seem to be the duty of the court to confine each inventor to the specific parts which he invented, and to which he is fairly entitled. The plaintiff is undoubtedly to be classed among the improvers of the machine, and has a respectable rank among them; but starting out with somewhat limited claims in 1853 and 1855, they in 1860 swelled to such large propor-

tions that one of the great difficulties in the case has been, in the midst of the wide field covered by his claims, to distinguish what were valid; in other words, to discriminate justly between improvements made by him, and those made by others.

It will be observed that the court has felt under the necessity, from the nature of the case, of limiting the claims of the plaintiff within somewhat narrow bounds. The reasons why this has been done have been given, and to the court seem conclusive. As an illustration of the character of many of these claims, it may be stated that several of them consist in putting the operator upon the planting machine. Now, claims of that kind should be scrutinized with peculiar jealousy. It is only under very special circumstances that a claim for a seat on a machine, upon which an attendant or operator can ride, should be sustained. All of these machines, certainly many, and among the earliest of them, had a platform or place for an attendant to ride. It is one of the indispensable requisites of the machine, and they were all constructed in that way. It was the simplest device possible to suggest that a man should get upon the machine and there ride. Therefore, when a party claims, as the plaintiff does in many of these cases, the method of putting a rider or attendant upon a machine as an invention, it should clearly appear that it was a patentable method [and that it should be protected by law, and that parties should not be prevented from placing an attendant upon the machine in such a way as their mechanical skill or ingenuity might suggest, otherwise; when a man has placed an attendant upon a machine, he seeks to cover all modes of putting the attendant on the machine; just as in this case, in relation to the runner, when he asks to put his hand upon the runner. Under the patent law, if that can be sustained, he prevents every body else from using a runner in a corn-planting machine.] [3] And then he can only claim his peculiar method. He cannot, under cover of his own mode, seek to include others. That is what the plaintiff has attempted to do in this case, just as he has in relation to the runner. Every man must be left to his own method of mounting the rider and using the runner, whether the result of mechanical or inventive skill.

The bill will therefore be dismissed.

[NOTE. On complainant's appeal, the supreme court reversed the decree of the circuit court dismissing the bill, and sustained reissued patents Nos. 1,036, 1,038, and 1,039 of the first series, and 1,095 of the second series, as good and valid patents, and further held that defendants were guilty of infringement. The Corn-Planter Patent, 23 Wall. (90 U. S.) 181.]

[3] [From 4 Fish. Pat. Cas. 363.]